```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
LUIS ENCALADA, FLORINEL AILINCA,
ALEJANDRO ANGELES, BENJAMIN
GUTIERREZ, JUNIOR PENA, MOISES
PEREZ, KAREEN SANCHEZ, FEDERICO
SCARRO, RADOLFO TELES and
ANGELICA VELASQUEZ,

                Plaintiffs,

           v.                           13 Cv. 1926 (PAC)

SDNY 19 MAD PARK, LLC, d/b/a
SD26, and ANTONIO MAGLIULO,

                Defendants.
------------------------------x
                                        November 6, 2014
                                        10:15 a.m.
Before:

                    HON. PAUL A. CROTTY

                                        District Judge

                         APPEARANCES

JOSEPH & KIRSCHENBAUM LLP
     Attorneys for Plaintiffs
BY:  MATTHEW KADUSHIN
     JOSEF NUSSBAUM

PILLINGER, MILLER & TARALLO, LLP
     Attorneys for Defendant Antonio Magliulo
BY:  JEFFREY T. MILLER
     LAWRENCE J. BUCHMAN
     ALAN L. KORZEN
```

EB68ENCT

1         (Trial resumed)

2         THE COURT:  I have my decision that I am going to read
3    into the record.

4         The week before the trial, last Friday, the parties
5    agreed to proceed with a bench trial in this matter.  The
6    parties have stipulated to various facts in their joint
7    pretrial order.  The defendants stipulated that the initial
8    jury charge, proposed by plaintiffs, were accurate statements
9    of the law and did not offer any counter requests to charge.

10        The trial began on November 3, 2014 and lasted three
11   days.  During those three days, we heard from seven witnesses
12   for the plaintiff:  Ms. Pliskin, Mr. Scarro, Mr. Perez, Mr.
13   Encalada, Mr. Gutierrez, Ms. Vasquez, and Ms. Sanchez.  We also
14   heard from two defendant witnesses:  Mr. Lombardozzi and Mr.
15   Magliulo.  We had deposition excerpts offered by the plaintiff
16   and the defendant.

17        The plaintiffs offered numerous exhibits into
18   evidence.  Most of these exhibits were plaintiffs' payroll
19   stubs and clock-in and clock-out records as well as deposition
20   testimony.  The defendants introduced into evidence limited
21   portions of the deposition testimony of Mr. Teles and Mr. Pena.

22        On the claims asserted by plaintiffs Luis Encalada,
23   Florinel Ailinca, Alejandro Angeles, Benjamin Gutierrez, Junior
24   Pena, Moises Perez, Federico Scarro, Radolfo Teles, the
25   so-called "food service" plaintiffs, and Angelica Velasquez and

1  Kareen Sanchez, the "coat check" plaintiffs, for unpaid minimum
2  wages, overtime wages, and misappropriated tips under the Fair
3  Labor Standards Act and New York Labor Law for the time they
4  worked at SD26 and/or San Domenico, from March 13, 2007 until
5  on or about November 9, 2013, the Court finds as follows:
6  　　　　　With respect to whether Mr. Magliulo was the
7  plaintiffs' employer under the Fair Labor Standards Act and New
8  York Labor law, in determining who is an employer within the
9  meaning of these two acts, the Court employs an economic
10 realities test, articulated by the Second Circuit in *Carter v.*
11 *Dutchess Community College*.  The four factors considered under
12 this test are whether the defendant had the power to hire and
13 fire the employees, supervised the work schedules or conditions
14 of employment, determined rates and methods of payment, or
15 maintained employment records.
16 　　　　　I find by a preponderance of the evidence that based
17 on Mr. Magliulo's deposition and credible testimony, and the
18 stipulations made and his testimony here in court, that the
19 *Carter* test for employment is satisfied and that Mr. Magliulo
20 is an employer within the meaning of both the Fair Labor
21 Standards Act and the New York Labor Law.
22 　　　　　First, Mr. Magliulo had the power to hire or fire
23 employees.  The parties stipulated that Mr. Magliulo was
24 involved with the day-to-day management of both restaurants.
25 Mr. Magliulo testified that he made the ultimate hiring and

firing decisions and that Stefano Lombardozzi did not possess the ultimate authority to hire or fire.

The Court also heard testimony from Mr. Perez, who recounted an instance where defendant exercised his disciplinary power and disciplined a server who refused to clean a table. According to Mr. Perez, when the server declined to follow Mr. Magliulo's instructions to clean the table, Mr. Magliulo replied "when you work at San Domenico, you do what I say." Rather than be disciplined, the server quit.

Second, Mr. Magliulo had the power to supervise work schedules and conditions of employment. Both Mr. Lombardozzi and Mr. Magliulo testified that Mr. Lombardozzi's initial schedules were subject to management approval. Therefore, contrary to plaintiffs' allegations, Mr. Lombardozzi did not have ultimate control over the scheduling of work -- Mr. Magliulo did.

This is supported by Mr. Perez's testimony that on one occasion he observed Mr. Magliulo complain to Mr. Lombardozzi that the restaurant was over-staffed on slow days. Mr. Perez testified that after Mr. Magliulo made these complaints, Mr. Lombardozzi re-arranged the staff.

Third, Mr. Magliulo had the power to set rates of pay. During his deposition, Mr. Magliulo testified that he set all compensation policies. And at trial, Mr. Magliulo testified in detail about his reluctance to have staff work double shifts

1    and described having to pay time-and-a-half wages to tired

2    employees as "asinine."  Therefore, even if Mr. Magliulo was

3    only a partial owner of SD26, he ran the day-to-day operations.

4    Based on these facts, the Court is satisfied that Mr. Magliulo

5    had the power to set rates of pay.

6             The fourth factor deals with Mr. Magliulo's

7    maintenance of employment records.  No evidence was presented

8    at trial which indicated that Mr. Magliulo maintained these

9    records.  These are records that should have been maintained

10   but were not maintained as the law requires.  Therefore, this

11   factor also weighs in favor of Mr. Magliulo being deemed the

12   employer.

13            Based on all these factors, and considering the

14   totality of the circumstances and the evidence presented, the

15   Court has no hesitation in labeling Mr. Magliulo as an employer

16   of plaintiffs in both San Domenico and SD26 under the FLSA.

17            Also, since the New York Labor Law employs a similar

18   definition of employer, using these factors, similar to the

19   ones I have just outlined, the Court finds by a preponderance

20   of evidence that Mr. Magliulo was also an employer within the

21   meaning of the New York Labor Law.

22            Now, with that out of the way, we turn to the details

23   of the plaintiffs' complaint.

24            The second issue is whether the plaintiffs were paid

25   for their hours worked under the Fair Labor Standards Act and

1   New York Labor Law.

2   　　　　Based on the substantial documentary evidence
3   introduced by plaintiffs, clear discrepancies existed between
4   the amount of time plaintiffs were clocked in and the amount of
5   time they were paid.  Plaintiffs' hours were routinely capped
6   at or reduced to a certain number, despite evidence
7   demonstrating that plaintiffs worked more hours.

8   　　　　Mr. Magliulo offered an explanation as to the
9   discrepancy and suggested there were times when plaintiffs were
10  clocked in but were not working.  This is anecdotal evidence
11  and was not supported by the copious records that demonstrated
12  just the opposite.

13  　　　　The testimony from the plaintiffs themselves, and from
14  Mr. Lombardozzi, indicates that when plaintiffs were clocked
15  in, they were working.  Nothing contradicts the records
16  supporting this claim.  Therefore, plaintiffs have met their
17  burden of proof and Mr. Magliulo failed to provide the Court
18  with any evidence to the contrary.  If Mr. Magliulo did not
19  believe that the clock-in and clock-out records were an
20  accurate reflection, the burden was on him, as the employer, to
21  provide the Court with alternative records.  Similarly, if Mr.
22  Magliulo did not want plaintiffs working overtime, the law of
23  this circuit, as articulated in *Chao v. Gotham Registry*, 514
24  F.3d 280 (2d Cir. 2008), required him to "make every effort to
25  prevent" the performance of the overtime.

1      Accordingly, I find that Mr. Magliulo failed to pay
2 plaintiffs the correct hourly rates required by the Fair Labor
3 Standards Act, Section 201, and the New York Labor Law, Section
4 650.
5      The third issue is whether the plaintiffs were paid
6 spread of hours.
7      The records introduced by plaintiffs show that the
8 workday frequently covered more than 10 hours.  The payroll
9 records do not show spread-of-hour payments, and defendant
10 concedes on this issue.
11      To the extent that the clock-in and clock-out records
12 demonstrate that plaintiffs worked over 10 hours in a single
13 day, plaintiffs are entitled to spread-of-hours pay pursuant to
14 Title 12 of the New York Regulations, Section 146-1.6.
15      The fourth issue is whether the plaintiffs were given
16 the required wage notice requirements.
17      Each plaintiff testified that they never received
18 annual wage notices and that the basis of their hourly rate was
19 never explained to them.  Defendant offered no evidence to the
20 contrary and conceded on this issue as well.  Therefore, I find
21 that Mr. Magliulo violated New York Labor Law, Section 195.
22      The fifth issue is whether the plaintiffs were given
23 notice of the tip pool, as required by the FLSA and New York
24 Labor Law.
25      It is undisputed that plaintiffs were not provided

1    with the required tip pool disclosures.

2               Mr. Magliulo failed to provide the tip-receiving
3    plaintiffs with information required by the Fair Labor
4    Standards Act, Section 3(m).  Mr. Magliulo failed to inform the
5    plaintiffs of their minimum wage; he failed to explain that the
6    minimum wage would be reduced because a tip credit was claimed;
7    and he failed to inform the plaintiffs of the amount of the tip
8    credit.

9               Mr. Magliulo, therefore, failed to provide the
10   tip-receiving plaintiffs with the notices required under the
11   current Section 146-1.3 of Title 12, or the former Section
12   137-2.2 of Title 12, for claims prior to January 1, 2011.

13              The sixth issue deals with whether the tip-receiving
14   plaintiffs were subject to illegal deductions from the tip
15   pool.

16              Plaintiffs claim that the managers and the polishers
17   were not tip eligible and yet were included in the tip pool.

18              Turning first to the manager claims, specifically,
19   plaintiffs' claim that Mr. Lombardozzi was ineligible for tips
20   because he was a manager.  The question of tip eligibility is
21   not a word game; it does not matter what label was applied to
22   any particular employee or whether the employee was called a
23   maitre d' or a manager.  The question is really, how do you
24   analyze the employee's duties to determine if they are eligible
25   for tips?

1        Mr. Lombardozzi was not a manager; he was a maitre d'.
2   The fact that each testifying plaintiff identified Mr.
3   Lombardozzi as a manager was a deliberate attempt, I believe,
4   to distort Mr. Lombardozzi's true title.  Moreover, this tactic
5   was at odds with what the plaintiffs stipulated to in the joint
6   pretrial order.  Stipulated fact number 25 was that Mr.
7   Lombardozzi was the maitre d' of SD26.
8        Nevertheless, in his role as maitre d', I find that he
9   was not eligible for the tips he received under the New York
10  Labor Law, Section 196-d.  The answers to the certified
11  questions posed by the Second Circuit in *Barenboim v.*
12  *Starbucks*, 995 N.E.2d, New York Court of Appeals 2013, are
13  directly on point.  The New York Court of Appeals stated that
14  the relevant consideration is whether the employee had
15  "meaningful authority or control over subordinates."  The Court
16  of Appeals further clarified that meaningful authority does not
17  mean final authority.
18        Based on the facts as I find them, I conclude that Mr.
19  Lombardozzi possessed this meaningful authority.  While I
20  accept both Mr. Lombardozzi's and Mr. Magliulo's testimony that
21  he did not possess ultimate hiring or firing authority, or
22  ultimate control over the schedule, Mr. Lombardozzi played a
23  large part in each process.  He frequently interviewed new
24  employees.  He frequently disciplined and/or fired existing
25  employees.  And he was responsible for creating the initial

1  schedule each week.  Therefore, even if Mr. Magliulo and Mr.
2  Fanning had ultimate authority over these actions, and even
3  accepting Mr. Magliulo's contention that 90 percent of Mr.
4  Lombardozzi's actions related to customer service, the
5  remaining 10 percent constitutes "meaningful authority" under
6  *Starbucks*.
7          Therefore, the Court finds that Mr. Lombardozzi, and
8  by extension, his assistant, are precluded from participation
9  in the plaintiffs' tip pool.
10         Turning next to the polishers, the Court rejects the
11 testimony that a special polisher role existed, whereby the
12 polisher was completely separate from the dining services.
13 Instead, I accept the testimony of Mr. Magliulo, that no such
14 position existed and the polishers were busboys who were
15 temporarily assigned to polish on certain nights.  Therefore,
16 the plaintiffs' claim that polishers should be excluded from
17 the tip pool is denied.
18         The seventh issue is whether the coat check plaintiffs
19 were employees or independent contractors.
20         In considering whether the coat check plaintiffs were
21 employees or independent contractors, I rely on Mr. Magliulo's
22 testimony that during the summer months, the coat check
23 plaintiffs were part-time employees, who received the minimum
24 wage during those months.  During the winter months, however, I
25 find that the coat check plaintiffs operated a concession, and

1    I accept the evidence of Mr. Magliulo's ahead of that of the
2    coat check plaintiffs, which I found to be lacking in
3    credibility.
4              Therefore, during the winter months, the coat check
5    plaintiffs were not employees, they were independent
6    contractors, and the plaintiffs have failed to demonstrate
7    otherwise.  The fact that they also cleaned the restaurant's
8    bathrooms is ancillary and does not justify an employee status.
9    Moreover, the evidence provided by Mr. Magliulo conforms to the
10   industrywide practice of contracting out cloakroom staff, who
11   then became responsible for operating the cloakroom.  It was
12   under this arrangement that the Court finds that Ms. Velasquez
13   was able to have her daughter, Ms. Sanchez, cover and assist in
14   some shifts.
15             The eighth issue is whether Mr. Magliulo's violations
16   were willful.
17             Prior to April 8, 2011, the definition of a willful
18   violation under New York Labor Law, Section 198, was whether an
19   employer knowingly violated the law.  The Court finds that Mr.
20   Magliulo's violations during this period were willful.  He
21   instituted a systematic policy of failing to pay workers for
22   all the hours they worked and failed to provide the required
23   wages and tip disclosures.  Mr. Magliulo himself testified that
24   he retained ultimate control over all aspects of the
25   restaurant.

1            The definition of willful under New York State Labor
2    Law changed on April 9, 2011.  Under the new definition, the
3    burden shifts to Mr. Magliulo to prove that the violations were
4    made in good faith.  Mr. Magliulo has failed to introduce any
5    evidence of good faith.  Aside from introducing portions from a
6    deposition unrelated to the issues of good faith, there is not
7    any evidence to support a finding of good faith.  Therefore,
8    Mr. Magliulo failed to discharge his burden and the Court has
9    no hesitation in determining that his violations were willful
10   under the new definition because they were not made in good
11   faith.
12           Now, with respect to the questions which were going to
13   be submitted to the jury.
14           Question number  1.  On plaintiffs' claims that
15   Antonio Magliulo was plaintiffs' employer at SD26 under the
16   Fair Labor Standards Act and New York Labor Law, the answer to
17   that question is yes.  Plaintiffs' claim is sustained.  The
18   verdict is for the plaintiff.
19           Question number  2.  On the claim that at SD26
20   employees were not paid for all hours worked, including
21   overtime, I find for the plaintiffs.
22           On plaintiffs' claims that at SD26 they were not paid
23   spread-of-hours pay, I find for the plaintiffs.
24           On the claim that they did not receive annual wage
25   notices, I find for the plaintiffs.

1        On the claim that they were not given adequate notice
2   of the tip credit under the Fair Labor Standards Act, I find
3   for the plaintiffs.
4        On plaintiffs' claims that at SD26 they were not given
5   adequate notice of the tip credit under New York law for the
6   time period before December 31, 2011, I find for the
7   plaintiffs.
8        On the claim that the employees were not given
9   adequate notice of the tip credit under New York law for the
10  time period after January 1, 2012, I find for the plaintiffs.
11       On plaintiffs' claims that at SD26 managers and
12  assistant managers were not eligible to participate in the tip
13  pool, I find for the plaintiffs on that.
14       With respect to question number 9, as to whether the
15  polishers were eligible to participate in the tip pool, I find
16  for the defendants.
17       On the coat check plaintiffs' claims that they were
18  defendants' employees, I find for the defendants.
19       The defendants' violations of the law were willful, as
20  I have just explained.
21       I find that the violations after a point in time were
22  not committed in good faith as required by the law.
23       Since plaintiffs were not paid for all hours worked,
24  plaintiffs are owed for every hour they were clocked in and not
25  paid, as set forth in Plaintiffs' Exhibits 14 and 15.  Those

1    records are the best evidence at the time that the plaintiffs
2    worked during those weeks.
3             Question 14.  Plaintiffs were not paid for all hours
4    worked.  Plaintiffs are owed unpaid time for the shifts that
5    they clocked in for but did not clock out.
6             Since plaintiffs were not paid spread-of-hours pay,
7    they are owed spread-of-hours pay for each record of a double
8    shift worked, as set forth in the summaries in Plaintiffs'
9    Exhibit 16.
10             I find that plaintiffs' summary of the total hours of
11   lunch shifts and dinner shifts they alleged they worked, as set
12   forth in Plaintiffs' Exhibit 16, is the best evidence of the
13   total number of lunch shifts and dinner shifts plaintiffs
14   worked.
15             With respect to the maitre d' and the assistant maitre
16   d', the manager and the assistant manager, they are not
17   eligible to participate in the tip pool.  The polishers, as I
18   previously indicated, are eligible to participate in the tip
19   pool.  That's the answer to question 17 and 18.
20             I find that the coat check plaintiffs are not
21   employees, in answer to question 19.
22             With respect to the San Domenico restaurant, which is
23   the predecessor of SD26, I find that Mr. Magliulo was Mr.
24   Encalada and Mr. Perez's employer.  Those two employees were
25   not paid for all hours worked; they were not paid the spread of

1    hours; they were not given adequate notice of the tip credit;
2    and the managers and assistant managers were not eligible to
3    participate in the tip pool.  These violations of the law were
4    willful.
5             That constitutes the Court's findings of fact and
6    conclusions of law.
7             I direct that the plaintiff prepare a schedule
8    tabulating the pay and the amount of money that is due and
9    owing pursuant to the findings of fact and the conclusions of
10   law that I have made.  You are to do that within the next ten
11   days, by Friday, the 14th of November.  Do it on three days'
12   notice to the plaintiffs.  And I will be prepared to sign the
13   order on the following Monday.
14            MR. KADUSHIN:  Three days' notice to the defendants?
15            THE COURT:  Three days' notice to the defendants.
16            MR. KADUSHIN:  May I clarify one point, your Honor?
17            THE COURT:  Yes.
18            MR. KADUSHIN:  Regarding question number 14, if you
19   answered yes, how many hours plaintiffs are owed for each lunch
20   shift and dinner shift, you want us to put that information,
21   what we believe the testimony is, based upon the record?
22            THE COURT:  Yes.
23            MR. KADUSHIN:  Then the same question regarding 17,
24   regarding how much we believe each party was injured per shift,
25   based upon the evidence that is in the record currently?

EB68ENCT

1     THE COURT:  That's what I mean.

2     MR. KADUSHIN:  Thank you for the clarification.

3     MR. BUCHMAN:  I have got two questions, your Honor.

4     So what you are saying is that we are getting three

5  days to review and do rebuttal on their tabulation of damages?

6     THE COURT:  Correct.

7     MR. BUCHMAN:  We can't get any more time than three

8  days?

9     THE COURT:  How much more time do you want?

10    MR. BUCHMAN:  They are getting ten days to present.

11  Can we get ten days?

12    THE COURT:  They have got to submit it in ten days.

13  They have got seven days.

14    MR. BUCHMAN:  Can we get the same seven to review?

15    THE COURT:  All right.

16    MR. BUCHMAN:  As far as any posttrial motions we may

17  want to make when we purchase the transcript, I have looked in

18  the local rules and I didn't see anything in your specific

19  rules if we wanted to do any posttrial motions.

20    THE COURT:  What posttrial motions do you want?

21    MR. BUCHMAN:  I am not sure.  I would like to look at

22  the transcript.

23    THE COURT:  The rules provide for you to make a

24  motion.  I am pretty confident on this, but you can make your

25  motion.  Today is the 6th.  I want the defendants to submit

1    their calculations and serve them on you by the 12th.

2              MR. KADUSHIN:  You mean plaintiffs, your Honor.

3              THE COURT:  The plaintiffs to submit their

4    calculations to the defendant by Wednesday the 12th.  That's

5    five workdays.  By the 19th of November, you can submit

6    whatever response you have.  And I will sign the order on this

7    by Friday the 21st.

8              You can have 20 days on which to contemplate making

9    your motion.  That will bring it to the 24th.  OK?

10             MR. BUCHMAN:  Thank you, your Honor.

11             MR. KADUSHIN:  I apologize, your Honor.  On the 12th,

12   we are to submit the calculations to defendants and file it on

13   ECF simultaneously?

14             THE COURT:  Yes.

15             MR. KADUSHIN:  We can do that by letter, your Honor?

16             THE COURT:  By letter or --

17             MR. KADUSHIN:  With an attached spreadsheet, your

18   Honor?  The letter explanation and an attached spreadsheet?

19             THE COURT:  Yes.

20             MR. KADUSHIN:  Thank you, your Honor.

21             THE COURT:  Why do you need that authorization?  You

22   already have a spreadsheet, don't you?

23             MR. KADUSHIN:  Correct.  I just wanted clarification

24   that we would submit a letter and attached to the letter a

25   spreadsheet summarizing the damages.

```
EB68ENCT
```

1                THE COURT:  Yes.
2            That was your understanding too.
3            MR. BUCHMAN:  I was just checking to make sure
4    Thanksgiving didn't get involved in it.
5            THE COURT:  Thanksgiving is not until the 27th.
6            MR. KADUSHIN:  Your Honor, may we also attach a
7    proposed order and entry of judgment?
8            THE COURT:  Yes.
9            The 24th is the date for your making your motion,
10   correct?
11           MR. BUCHMAN:  Yes, your Honor.
12           THE COURT:  If you decide earlier not to make the
13   motion, please let us know.  But if you want to make a motion,
14   you have to make it by the 24th.
15           You can respond in ten days?
16           MR. KADUSHIN:  That's fine, your Honor.
17           Mr. Nussbaum is Canadian so he doesn't celebrate
18   Thanksgiving.
19           THE COURT:  He has already had his Canadian
20   Thanksgiving, right?
21           MR. NUSSBAUM:  October.
22           THE COURT:  October has passed.
23           The 24th.  And you get ten days, that includes
24   Thanksgiving.  So that will bring us to -- do it by the 5th of
25   December, your response.  Then the reply would be by the 12th.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    MR. KADUSHIN:  Then the date on which we would submit
2 our application for attorneys' fees would be at what point,
3 your Honor?
4    THE COURT:  Well, after I enter judgment, I suppose.
5    MR. KADUSHIN:  Maybe we should wait until we respond
6 to defendants' motion and include that number as well.
7    THE COURT:  It's up to you.  Probably that's the
8 better way to do it, Mr. Kadushin, so we will have a complete
9 record.
10   MR. KADUSHIN:  That's fine, your Honor.
11   THE COURT:  OK.  Anything else?
12   MR. BUCHMAN:  No, your Honor.  Thank you.
13   MR. KADUSHIN:  Thank you, your Honor.
14   THE COURT:  Thank you.
15   (Adjourned)